# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 07-578 |
| v. | OPINION |
| SHARPE JAMES, | HON. WILLIAM J. MARTINI |
| Defendant. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendant Sharpe James's second motion for a new trial, pursuant to Federal Rule of Criminal Procedure 33(a). For the reasons that follow, Defendant's second motion for a new trial will be **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

On July 12, 2007, a federal Grand Jury indicted Defendant Sharpe James on 25 Counts related to misuse of his authority as Newark's then-Mayor and a New Jersey State Senator. The Indictment alleged Defendant (1) improperly used City of Newark-funded credit cards and (2) improperly steered sales of discounted City-property to a companion; and while a Senator, shepherded legislation to increase his power as Mayor to cede property in this manner.

Prior to trial, the Court severed the credit card fraud charges, as reflected in the five-count Redacted Indictment filed on February 11, 2008. Trial commenced with jury

selection on February 26, 2008.  Seven weeks later, on April 16, 2008, the jury convicted Defendant of Mail Fraud (Counts 1 to 3); Fraud Involving Local Government Receiving Federal Funds (Count 4); and Conspiracy to Defraud the Public of Honest Services (Count 5) in violation of Title 18, United States Code, Sections 1341, 666(a)(1)(A), and 371, respectively.

After trial, Defendant moved for a judgment of acquittal and new trial pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure.  On July 24, 2008, this Court denied both motions, and on July 29, 2008, sentenced Defendant to 27 months imprisonment plus three years supervised release.  Thereafter Defendant appealed his conviction.

On September 16, 2010, the United States Court of Appeals for the Third Circuit affirmed the conviction on all counts, except reversing the honest services conspiracy count in light of the Supreme Court's June 2010 decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010).  The parties agreed a re-sentencing hearing was not required as the Third Circuit substantially affirmed Defendant's conviction.

### A. Defendant's Present Rule 33 Motion

Presently, Defendant moves for retrial claiming that newly discovered evidence shows one of the jurors, Kenneth Asuquo, should have been excused for cause, and because he was not, Defendant did not receive a fair trial.  Specifically, Defendant claims that during *voir dire*, Mr. Asuquo failed to disclose that his mother and step-father were

employees of the City of Newark at the time of trial,[1] and that this fact was material to Mr. Asuquo's impartiality and fitness to serve. (Def. R. 33 Mot. Br., at 2-3, 6, ECF No. 199.)

B.  **Jury Selection Prior to Trial**

The Court took careful steps to ensure a fair and impartial jury. Jury selection in this matter involved a two-step *voir dire* process ("Phase-One" and "Phase-Two"). In Phase-One, prospective jurors completed a questionnaire drafted by the parties and the Court consisting of 38 questions, which probed prospective jurors' knowledge of and any interactions with Defendant James and the City of Newark. The pertinent Phase-One questions and Mr. Asquo's responses follow:

> 11(a). Do you personally know, or do you have any immediate family members or close friends who know, either of the defendants or any members of their families?
>   A:   No
>
> 16. Have you or any member of your immediate family ever had any business or other dealings with the City of Newark?
>   A:   No
>
> 19. Have you or any member of your immediate family lived in Newark in the past 25 years? If yes, please briefly explain who lived in Newark, when, and for how long.
>   A:   Yes. [Lists step-father, mother, and an additional relative along with their respective years of residence]
>
> 21. Before today, had you heard or read anything about Sharpe James or Tamika Riley [James' co-defendant] as it pertains to this case? If yes, where did you hear or read about it (check all that apply): TV, Newspaper, Magazine, Radio, Internet, Other_____.

---

[1] His mother became a City of Newark employee in 1989; his step-father became one in 1995. At the time of trial, approximately 4,261 people were employed by the City. (Gov't Br. in Opp. at 4, ECF No. 205.)

        A:     Yes. [Checked Newspaper].

22. Have you, any member of your immediate family, or any close friend ever been involved with a political campaign in opposition to or in support of Sharpe James?
        A:     No.

33. Have you or any member of your immediate family ever been an officer or employee of the federal government or of any state, county, or municipal government?
        A:     Yes.

(Gov't Br. in Opp., Ex. 1.)

While the questionnaire never specifically asks if any family members are employees of the City of Newark, Defendant contends that Mr. Asuquo should have disclosed his parents' employment history in response to Question 16. Although Mr. Asuquo responded 'No' when asked whether any "immediate family ever had any business or other dealings with the City of Newark" (Question 16), Mr. Asuquo truthfully offered that close relatives worked in some government capacity, (Question 33), and listed their names when asked if immediate family members lived in Newark for over 25 years (Question 19).

The Court provided parties with a full set of completed Phase-One questionnaires, and entertained parties' challenges for cause based on jurors' responses. In Phase-Two, the Court individually questioned the remaining prospective jurors, including Mr. Asuquo, on the record. Throughout Phase-Two, the parties were in possession of the completed Phase-One questionnaires, and able to request that the Court ask potential

4

jurors additional questions and probe further based on their Phase-One responses. (Gov't Br. in Opp. 5.)

When individually questioned by the Court, Mr. Asuquo appeared forthright in responding to the Court's inquiries, and, despite having some familiarity with the case, repeatedly affirmed his ability to remain fair and impartial. (*Voir Dire* Hr'g Tr. 5-12, Feb. 28, 2008.) When asked about living in Newark for 26 years and whether he knew Defendant personally, Mr. Asuquo candidly told the Court of his limited interaction with Defendant 10 years prior as a high-school student. The Government took that opportunity to request that the Court ask questions clarifying the extent of that interaction, and Mr. Asuquo obliged by explaining that along with fellow students, he interviewed Defendant as part of a school project. Defendant, on the other hand, despite having the same opportunity, failed to request that the Court probe further into Mr. Asuquo's close ties to Newark, as demonstrated by his Phase-One responses.

Throughout jury selection, the Court and all parties remained satisfied with Mr. Asuquo's ability to be a fair and impartial juror, and as a result, he was selected to serve. In spite of Mr. Asuquo's full and seemingly candid participation during jury selection, Defendant now alleges that Mr. Asuquo "either through inadvertence or purposeful falsity failed to disclose in *voir dire* that both of his parents were employed by the City of Newark at the time of trial." (Def. R. 33 Mot. at 2-3.) That allegation forms the sole basis for Defendant's motion for re-trial. Defendant posits that Mr. Asuquo may have been
5

biased because his parents were Newark employees, and given his concern for parents' continued employment, Mr. Asuquo may have felt "pressure from adverse political forces [who controlled his parents job security] or hidden bias if his parents felt mistreated by me." (James Aff., April 4, 2011, in Support of R. 33 Mot. ("James Aff."), ¶ 3.) Defendant further asserts that at the very least, these allegations require the Court to hold an evidentiary hearing on Mr. Asuquo's potential bias.

## II. DISCUSSION

Federal Rule of Criminal Procedure 33(a), allows the Court, upon Defendant's motion to "vacate any judgment and grant a new trial if the interest of justice so requires." For Defendant to obtain a new trial because Mr. Asuquo failed to disclose material information during *voir dire*, Defendant must satisfy both prongs of the test articulated by the Supreme Court in *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555 (1984). Specifically, Defendant has the burden to show that Mr. Asuquo "[1] failed to answer honestly a material question on *voir dire* and then [2] further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough* at 555; *United States v. Hodge*, 321 F.3d 429, 441 (3d Cir. 2003). In applying this standard, the Court is mindful that potential jurors' "motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough* at 555. Thus, the fundamental issue presently before the

6

Court is whether Defendant was fairly tried by an impartial jury, or whether, instead, Mr. Asuquo's alleged bias against Defendant was of such a nature that Defendant did not receive a fair trial.

With regards to Defendant's claim that an evidentiary hearing as to Mr. Asuquo's potential bias is warranted, the Court starts with the proposition that holding a post-trial evidentiary hearing[2] to address Defendant's claim of juror misconduct is disfavored. *United States v. Gilsenan*, 949 F.2d 90, 97 (3d. Cir. 1991) (courts should "always [be] reluctant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences."). As such, Defendant's allegations of Mr. Asuquo's exposure to prejudicial extra record information does not automatically entitle Defendant to such an evidentiary hearing. *United States v. Gilsenan*, 949 F.2d 90, 97 (3d. Cir. 1991). Instead, a post-trial evidentiary hearing should be held "only [if Defendant] comes forward with 'clear, strong, substantial and incontrovertible evidence'" demonstrating that juror misconduct occurred. *United States v. Sattar*, 395 F. Supp. 2d 66, 73 (S.D.N.Y. 2005) (*quoting United States v. Ianniello*, 866 F.2d 540, 543 (2d. Cir. 1989)), *aff'd sub nom. United States v. Stewart*, 590 F.3d 93 (2nd Cir 2009), *cert. denied* 130 S.Ct. 1924 (2010).

### A. Mr. Asuquo Provided Truthful Answers on Voir Dire

---

[2] The scope of the Court's inquiry at such a hearing would be limited to consideration of whether "extraneous information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." Fed. R. Evid. 606(b).

Under the first *McDonough* prong, Defendant must show Mr. Asuquo failed to answer honestly a material question on *voir dire*. Put another way, Defendant must demonstrate that during jury selection, Mr. Asuquo provided an affirmative dishonest response. *United States v. Holck*, 398 F. Supp. 2d 338, 360 (E.D. Pa. 2005). A juror's mistaken, but honest answer does not satisfy this threshold. *United States v. Greig*, 133 F. Supp. 2d 697 at 699-700, *aff'd sub nom. United States v. Hodge*, 321 F.3d 429, 441 (3d Cir. 2003) (juror's failure during *voir dire* to respond to the court's inquiry asking all jurors: "Do any of you know, or are you related to [Defendant]?" was honest – although perhaps mistaken – where after trial, juror testified that she knew defendant from an adult education class but did not respond to the court's inquiry because she interpreted the question as asking whether she knew defendant personally).

Defendant's motion focuses on Mr. Asuquo's 'No' response to Question 16 which asked if immediate family members had "business or other dealings with the City of Newark." However, Defendant ignores that Mr. Asuquo undisputedly provided truthful answers to the other questions in the Phase-One questionnaire, where he specifically indicated that immediate family members worked in government, were long-time Newark residents, and even provided the names of those family members employed by the City; and that in Phase-Two, Defendant failed to request that the Court probe further into those

responses to assess Mr. Asuquo's candor and ability to serve as an impartial juror.[3]

Furthermore, the Court agrees with the Government that Question 16 is at best, imprecise. That question, in its entirety, reads as follows: "Have you or any member of your immediate family ever had any business or other dealings with the City of Newark?" At the core of the question is the non-exhaustive, vague phrase "business or other dealings." In light of the imprecise phrasing, the Court is satisfied that whether his parents' municipal employment qualified as "business or other dealings" is unclear, and that any juror in Mr. Asuquo's position could reasonably respond 'Yes' or 'No' to Question 16. *See United States v. Boender*, 719 F. Supp. 2d 951 (N.D. Ill. 2010) *aff'd* 649 F.3d 650 (7th Cir. 2011) (juror's non-response to court's *voir dire* inquiry whether he had "dealings with any City of Chicago department or elected officials" was proper because nothing in the language used in the question put juror on notice that a thirty-year old traffic incident was considered a "dealing" with a city agency, its personnel, or its officers). The phrase's ambiguity becomes more apparent given that Question 33 subsequently asked if Mr. Asuquo's immediate family members worked in government.

Based on the foregoing, even if the Court were to accept Defendant's assertion that Mr. Asuquo incorrectly responded 'No' to Question 16, the Court cannot accept Defendant's unsupported claim that Mr. Asuquo's response was not an honest one.

---

[3] That opportunity was available to Defendant as demonstrated by the Court's further inquiries into Mr. Asuquo's interaction with Defendant ten years prior to trial at the request of the Government.

9

*Hodge* at 441. Defendant's singular focus on the response to one imprecisely worded question is misplaced, and ignores Mr. Asuquo's otherwise unquestioned candor and truthfulness about his close ties to Newark throughout *voir dire*. In sum, Defendant has failed to show that during jury selection, Mr. Asuquo provided an affirmatively dishonest statement to the Court as required by the first *McDonough* prong, and Defendant's motion for a new trial fails on this basis alone.

> **B. Defendant's Knowledge that Mr. Asuquo's Parents Were City of Newark Employees Would Not Have Provided a Basis to Challenge for Cause**

Additionally, Defendant's motion fails under the second *McDonough* prong because even if Mr. Asuquo answered Question 16 as Defendant asserts he should have, Mr. Asuquo's response would not have provided Defendant with a basis to challenge Mr. Asuquo's presence on the jury for cause. Even assuming, *arguendo*, that Mr. Asuquo intentionally lied to the Court about his parents' employer, Defendant has failed to present new evidence that Mr. Asuquo did so to serve as a biased and prejudicial juror. *See McDonough* at 556 ("The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."); *see also, United States v. Stewart*, 433 F.3d 273, 305 (2d Cir. 2006) (even if juror's *voir dire* responses were false, defendant still must demonstrate that true or correct responses support the inference that the juror was biased or prejudicial against the defendant or had prejudged the evidence). As previously noted, the Court and the parties

were fully satisfied with Mr. Asuquo's ability to serve as an impartial juror, and there is nothing on the record, during *voir dire* or trial, to suggest Mr. Asuquo's jury service was in any way biased.

Nonetheless, Defendant now claims that had he known Mr. Asuquo's parents were hired by Defendant and were Newark municipal employees at the time of trial, he would have challenged Mr. Asuquo for cause. (James Aff., ¶ 3.) A successful challenge for cause would in turn require a determination that Mr. Asuquo had actual, implied or inferred bias or impartiality, as demonstrated through a "personal relationship with a party, witness or attorney in litigation, or a biased state or mind concerning a party or issue in case." *U.S. v. Holck*, 398 F. Supp. 2d 338, 362 (E.D. Pa. 2005) (*quoting United States v. Greer*, 285 F. 3d 158, 171 (2d Cir. 2002)); *Abiff v. Gov't of Virgin Islands*, 313 F. Supp. 2d 509 at 513 (D.Vi. 2004). However, Defendant has failed to present any evidence that during his service as a juror, Mr. Asuquo was unable to "'faithfully and impartially apply the law'." *United States v. Calabrese*, 942 F.2d 218, 223 (3d Cir. 1991) (*quoting United States v. Salamone,* 800 F.2d 1216 (3d Cir.1986).

To begin with, evidence of Mr. Asuquo's parents' occupation, standing alone, is insufficient to conclude that Mr. Asuquo was biased. *See United States v. Marji*, 158 F.3d, 60, 62 (2d Cir. 1998) ("It is well settled that juror not known to have actual bias is not excludable merely because he or she is a member of a particular occupation.").

Moreover, Mr. Asuquo's parents were two employees in a municipal workforce of

over 4,000 persons. Their relationship to Defendant, much less that of their son, is too attenuated for the Court to have inferred Mr. Asuquo's bias was such that there was cause to remove him as a juror. *See United States v. Kelton*, 518 F.2d 531 (8th Cir. 1975) (juror's acquaintance with defendant's family was too attenuated to support finding of "actual prejudice."); *and United States v. Todman*, 117 Fed.Appx. 824, 827 (3d Cir. 2004) (no actual or implied bias where during *voir dire*, juror informed court that defendant's attorney was opposing counsel against her employer in an unrelated administrative proceeding, after juror assured the court she could remain fair and impartial, and with the benefit of direct questioning and observation, the court determined that juror was credible and unbiased; additionally the court found that any bias inherent to juror's employment as a legal assistant was too attenuated to constitute bias).

A recent unreported decision, *U.S. v. Bangiyev*, 2008 WL 4240005 (E.D.N.Y. 2008), is particularly instructive in determining whether Defendant has satisfied the second *McDonough* prong. There, defendant asserted that had an attorney/law professor juror fully disclosed his academic credentials and experience as a litigator during *voir dire*, he would have challenged that juror's inclusion for cause. The *Bangiyev* Court held that defendant failed to meet his burden under the second *McDonough* prong because the juror would not have been removable for cause based on his occupation, and no evidence indicated juror harbored any bias against defendant.[4] Additionally, the court found

---

[4] The *Bangiyev* Court also held that defendant's motion failed under the First *McDonough* prong.

defendant's claim that he was denied his right to exercise a peremptory challenge to be without merit where defense counsel did not seek further inquiry about the jurors work experience and academic background after he told the court during *voir dire* that he had a law degree and was a professor of political science. On those facts, the *Bangiyev* Court denied defendant's Rule 33 motion without a hearing.

As in *Bangiyev*, Mr. Asuquo was not removable for cause because there was no indication that Mr. Asuquo was biased against Defendant on the basis of his parents' employment with the City of Newark. Mr. Asuquo repeatedly affirmed his ability to remain impartial, and all parties as well as the Court were satisfied with those affirmances. Defendant's Rule 33 motion fails to present any objective evidence to the contrary. Furthermore, Mr. Asuquo provided Defendant with substantial information about his close-ties to Newark through his Phase-One answers, but Defendant failed to further inquire into the extent of those ties. In sum, and for substantially the same reasons offered by the *Bangiyev* Court, Defendant's Rule 33(a) motion also fails under the second *McDonough* prong.

### C. No Evidentiary Hearing is Necessary to Assess Mr. Asuquo's Impartiality as a Juror

Defendant's present motion is based on his unsupported ad speculative claim that Mr. Asuquo may have felt "pressure from adverse political forces exerted on the juror or hidden bias if his parents felt mistreated by me." (James Aff., ¶ 3.) Defendant cites *United States v. Colombo*, 869 F.2d 149 (2d Cir. 1989), to show that at the very least, an

evidentiary hearing is now warranted to determine whether Mr. Asuquo's jury service was impartial. As a threshold matter, the Court reiterates that evidentiary hearings of the kind requested by Defendant are disfavored, and granting such a request is only appropriate in the exceptional case. *Gilsenan,*, 949 F. 2d at 97; *see also, United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) (an evidentiary hearing is not to be used by a convicted defendant as an opportunity to conduct a fishing expedition); *and United States v. Boender*, 719 F. Supp. 2d 951, 963, 966 (N.D. Ill. 2010) *aff'd* 649 F.3d 650 (7th Cir. 2011) (an evidentiary hearing regarding a juror's responses in *voir dire* "is not warranted where only scant evidence of dishonesty or misconduct has been presented").

Defendant's reliance on *Columbo* is misplaced. In *Columbo*, defendants' Rule 33 motion was supported by an alternate juror's affidavit stating that the juror in question confided in her that she affirmatively lied in *voir dire* about her brother being an attorney for fear that would make her ineligible to serve on the jury, and failed to disclose her familiarity with a location frequented by defendants which she described to other jurors as a "hang out for gangsters." *Id*. at 150.

Defendant's motion, on the other hand, is unsupported by any objective evidence suggesting that Mr. Asuquo's attenuated connections to Defendant made him biased or partial. The speculative evidence presented by Defendant is a far cry from the compelling evidence in *Colombo* suggesting potential juror bias.[5] As such, the circumstances

---

[5] *Columbo* was indeed an exceptional case. *See United States v. Bangiyev*, 2008 WL 4240005, at *7 (E.D.N.Y. 2008) (noting that *Columbo* in the only case remanded by the Second

presented by Defendant's present motion do not constitute one of those rare instances where the Court needs to recall discharged jurors to hold a hearing. *United States v. Gilsenan*, 949 F.2d 90, 97 (3d. Cir. 1991); *see also, United States v. Sattar*, 395 F. Supp. 2d 66, 74 (S.D.N.Y. 2005) ("[t]here is no reasonable basis to conclude that [allegedly biased juror's] responses under oath were not truthful, that he could not accept the legal principles he was required to accept, and that he decided the case based solely on the facts and the law. [The juror at issue] served conscientiously during a lengthy trial and there is no basis to require him to answer further questions.")

In short, Defendant has failed to present any clear, strong, substantial or incontrovertible evidence of juror impropriety and accordingly, Defendant's request for an evidentiary hearing is **DENIED**.

### III. CONCLUSION

For the reasons stated above, Defendant's second motion for a new trial, is **DENIED**. An appropriate Order accompanies this Opinion.

s/ William J. Martini<br>
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: October 25, 2011**

---

Circuit for an evidentiary hearing on the basis of juror has never found reason to overturn a verdict on the basis of juror nondisclosure under *McDonough*).